## In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-1102

TOMMY SMITH, JR.,

*Plaintiff-Appellant,*

*v.*

MOISES GOMEZ, ET AL.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-CV-114—**Rudolph T. Randa**, *Chief Judge*.

SUBMITTED JUNE 18, 2008*—DECIDED DECEMBER 15, 2008

Before COFFEY, RIPPLE, and SYKES, *Circuit Judges*.

COFFEY, *Circuit Judge*.    Tommy Smith, a Wisconsin
prisoner, sued a number of law enforcement officers

---

*    After examining the briefs and the record, we have concluded
that oral argument is unnecessary. Thus, the appeal is submitted
on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

including officers of the Milwaukee Police Department (MPD) and employees of the Wisconsin Division of Community Corrections (DCC) and the Wisconsin Division of Hearings and Appeals (DHA), as well as the governmental entities themselves, arguing under 42 U.S.C. §§ 1983, 1985(3), and 1986 that the defendants conspired to deprive him of his constitutional rights to "freedom, liberty, full due process, and equal protection" after he was arrested for being a felon in possession of a firearm and for attempted armed robbery. As a result of the arrest, his parole was revoked. The trial court resolved all claims in favor of the governmental authority on various grounds, including their absolute immunity as well as their qualified immunity. Smith appeals, essentially repeating the same claims he made in the trial court. We affirm.

The events leading to Smith's complaint began on February 13, 1999, when Milwaukee police detectives found a handgun while investigating an unsuccessful armed robbery. Some four days later on February 17, 1999, they were able to trace the gun back to Smith's cousin, (Sharon Lewis), using its serial number. Detective Moises Gomez and another detective, defendant Michael Grogan, questioned Lewis about the gun. Initially she told the officers during questioning that she owned the gun and that it had been stolen. According to her testimony she claims that the officers advised her that if she was truthful and cooperative they would not arrest her. In response, Lewis stated to the officers that on February 8 she had ordered a gun for Smith, because he could not purchase one as a convicted felon. Lewis told the police that on February 10, she and Smith went to pick up the gun, she

had purchased it and turned it over to him. He later reimbursed her for the weapon. Smith told Lewis to hide the gun above a ceiling tile in her bedroom. On February 12, Smith retrieved the gun from Lewis's home. Two days later, "Mike G," who, like, Smith, was a member of the "Gangster Disciples gang," told Lewis that the gun had been lost during an attempted car robbery. Based on these facts, Gomez determined that Smith should be arrested for attempted armed robbery and possessing a firearm while in the status of a convicted felon. Smith was arrested without incident and charged with attempted armed robbery as well as being a felon in possession of a firearm on February 24 and sentenced to a concurrent term of one year and nine months' imprisonment. This sentence occurred as a direct result of his parole violation and was related to his 1992 conviction for armed robbery. While in prison, he filed a petition for a writ of habeas corpus concerning the circumstances of his arrest and subsequent parole revocation, and released from confinement before a decision was rendered.

The substance of Smith's lawsuit centers around his contention that he was arrested without probable cause and that there was a conspiracy against him to deprive him of his civil rights. Smith claimed that Gomez obviously did not believe Lewis was telling the truth when she said it was her gun since Gomez gave her a warning about truthfulness. Smith argues that his arrest, which was prompted by the story Lewis told the police, was false. According to Smith, Officers Gomez, Grogan, and a third police detective, Jon Sell, conspired with his parole agent, defendant Dawn Davenport of the DCC, to deprive Smith

of his constitutional rights when they placed a parole hold on him. Davenport put a parole hold on Smith after receiving authorization from her supervisor, defendant Irving Suesskind. Subsequently, defendant Andrew Riedmaier, an Administrative Law Judge, held a hearing and ordered the revocation of Smith's parole for possessing a firearm as a felon, and defendant William Lundstrom, Assistant Administrator of the DHA, sustained the revocation.

At the initial screening, the trial court dismissed Smith's complaint without prejudice. *See* 28 U.S.C. § 1915A. The court reasoned that because Smith's claims are all based on his allegation that the defendants conspired to arrest him and revoke his parole, any determination in Smith's favor would necessarily imply the invalidity of the parole revocation and confinement. Such claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), according to the court. *Heck* holds that a § 1983 plaintiff seeking damages for an allegedly unconstitutional conviction, imprisonment, or other such harm must initially establish that the conviction has been reversed, expunged, declared invalid, or called into question by the issuance of a federal writ of habeas corpus. The court concluded that since Smith had not successfully challenged and invalidated his parole revocation, *Heck* precluded any relief for him under § 1983 or other federal civil rights statutes.

Smith next filed a motion for relief from the screening order. *See* FED. R. CIV. P. 60(b). And Smith argued that his complaint should not be *Heck*-barred because his petition for a writ of habeas corpus was rendered moot at the time

of his release from prison. In April 2005 the trial court agreed that Smith's § 1983 claims were not barred by *Heck* and permitted Smith to amend his complaint. However, the court dismissed Smith's claims under § 1985(3) and § 1986 and also dismissed as defendants the MPD, the DCC, and the DHA. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Smith thereafter filed an amended complaint against the following remaining defendants: Gomez, Grogan, Sell, Davenport, Suesskind, Riedmaier, and Lundstrom. The defendants were sued in their individual capacities. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000); *Hill v. Shelander*, 924 F.2d 1370, 1372-73 (7th Cir. 1991).

In September 2006, after the pleadings were filed, the trial court granted a motion to dismiss filed by Davenport, Riedmaier, Lundstrom, and Suesskind, concluding that the first three defendants were entitled to immunity and that the only potential theory of liability for Suesskind would be respondeat superior, which is not permitted under § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 878 (7th Cir. 1992). The court also granted summary judgment to Gomez, concluding that he was protected by qualified immunity because a reasonable police officer would have believed there was probable cause to arrest Smith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The only remaining defendants, therefore, were Sell and Grogan. In May 2007 the trial court granted Sell's motion for summary judgment. Sell asserted that he was not personally involved in the alleged constitutional violations and submitted an affidavit to this effect. The trial court

determined that Smith had failed to submit any admissible evidence to contradict Sell's sworn assertions and concluded that he had not been involved in the events surrounding Smith's arrest and parole revocation. And finally, in December 2007, the trial court granted Grogan's motion for summary judgment and dismissed the case. Grogan stated in an affidavit that he was not personally involved in the alleged constitutional violations and that he was entitled to qualified immunity. The court noted that there was a disputed issue of material fact with respect to whether Grogan was involved in Smith's arrest. However, the court also reasoned that since Smith's arrest was supported by probable cause no liability could attach. The court also concluded that Grogan was not personally involved in the decision to revoke Smith's parole.

On appeal, Smith raises a host of arguments, disputing nearly every ruling made by the trial court throughout this protracted litigation. Most of his assertions are grounded in his belief that the named defendants participated in a conspiracy against him to deprive him of his civil rights. We note at the outset that conspiracy is not an independent basis of liability in § 1983 actions. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). Moreover, many of Smith's claims on appeal are patently frivolous, consisting of baseless accusations of unlawful conduct and fabrication of evidence by the defendants. We conclude that the trial court's reasoning on all of the various appealed issues, discussed at length below, are proper, and we commend the court for its thorough treatment of Smith's many contentions.

First Smith challenges several of the rulings the trial court made in its April 2005 order. Smith argues that the court should not have dismissed the claims he made under § 1985(3) and § 1986 and should not have dismissed the MPD, DCC, and DHA as defendants. He argues that his status as a parolee was sufficient to meet the "otherwise class-based" requirement of § 1985(3). Smith admits that the MPD, DCC, and DHA are not sueable entities; however he contends that the court should have accepted his designating them as defendants as a "John Doe" identification of the city of Milwaukee and State of Wisconsin. He therefore contends that the city and state are responsible for the inadequate supervision of their employees, which permitted them to conspire against him.

The trial court's reasoning on these questions is incontrovertible, however. Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law such as are alleged in Smith's complaint, but the conspiracy must be motivated by racial, or other class-based discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). Smith has failed to sufficiently allege such animus because status as a parolee is not considered a "suspect class" for equal-protection purposes. And because Smith has failed to state a § 1985 claim, his § 1986 claim fails as well. *See Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992). Smith asks that we remand this case to allow him to name the city of Milwaukee and the state of Wisconsin as defendants. However, the trial court previously permitted Smith to amend his complaint—after informing him that the MPD, DCC, and DHA would not be liable—and nor

did he add the city or the state as parties at that time. As a result, any claim against them has been waived. In any event, such a remand would be futile: the state of Wisconsin is also not a proper defendant for a § 1983 action because it has Eleventh Amendment immunity, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67 (1989), and the only theory of liability for the state and the city would be respondeat superior which, as noted above, is not permissible in an action brought under § 1983.

Smith next challenges the trial court's dismissal of various defendants in its September 2006 order. In that order, the court determined that Gomez and Lundstrom were entitled to qualified immunity, that Davenport and Riedmaier were entitled to absolute immunity, and that there could be no liability for Suesskind under a respondeat superior theory. Smith's basic contention to refute dismissal is that no reasonable officer could believe there was probable cause for his arrest. And because there was no basis for arrest, there was no lawful reason, according to Smith, for his parole to be revoked.

Again, the trial court was correct in its evaluation of Smith's claims against these defendants. Qualified-immunity claims are resolved by answering the two questions set out in *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). First, the court "must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201; *see also Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005). If the

answer to this question is "yes," then "the next, sequential step is to ask whether the right was clearly established" at the time of the alleged violation. *Saucier*, 533 U.S. at 201. The only question we need resolve, then, is whether Smith's right to freedom from unlawful search and seizure was violated.

Upon review the undisputed evidence clearly establishes that Smith's rights were not violated. "Police ordinarily have probable cause if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The parties agree with the following: the gun the police recovered matched the serial number of the gun owned by Lewis; Lewis is Smith's cousin; Lewis said that Smith paid for the gun; Lewis told police that Smith took the gun from Lewis's home on February 12, 1999; and Mike G told Lewis that the gun had been lost during an attempted armed robbery. This evidence is sufficient to establish probable cause for Smith's arrest. And it is well-established that when police officers have probable cause, they may effect an arrest without a supporting warrant. *See Shipman v. Hamilton*, 520 F.3d 775, 778 (7th Cir. 2008).

The trial court also properly determined that Davenport and Riedmaier were entitled to absolute immunity. Davenport was a parole agent employed by the DCC, and

Riedmaier was an ALJ employed by the DHA. Additionally, the absolute immunity enjoyed by judges for judicial actions taken in accordance with their jurisdictional authority extends to other officials, including ALJs, when they perform functions that are "closely associated with the judicial process." *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Forrester v. White*, 484 U.S. 219, 225 (1988); *see also Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005). "Parole board members are absolutely immune from suit for their decisions to grant, deny, or revoke parole." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996) (internal quotation marks and citation omitted). And when officials engage in activities that are "inexorably connected with the execution of parole revocation procedures and are analogous to judicial action" they are also entitled to absolute immunity. *Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994) (internal quotation marks and citation omitted). The challenged acts of Davenport and Riedmaier were undoubtedly well within the ambit of their absolute immunity. Suesskind, as Davenport's supervisor at the DCC, authorized Davenport to place a parole hold on Smith. Smith's sole complaint about Suesskind was that he thereby participated in the "conspiracy" against him to deprive him of his civil rights. The same theory of absolute immunity that applies to Davenport thus protects Suesskind from liability as well.

The requirements for absolute immunity have similarly been met with respect to Lundstrom. Lundstrom was an assistant administrator with the DHA. According to the record, Lundstrom had the same quasi-judicial responsibilities as Riedmaier, though it is not clear whether he was

also an ALJ. Lundstrom reviewed Riedmaier's findings, found that Lewis's statements were credible because they went against her penal interests, and also found that her statements demonstrated by a preponderance of the evidence that Smith possessed a firearm in violation of his parole. Therefore, his role was "functionally comparable" to that of a judge's. *See Cleavinger*, 474 U.S. at 200.

Smith next argues that the trial court should not have dismissed Sell as a defendant in its May 2007 order. According to Smith, Sell personally instructed Davenport to put a parole hold on Smith, thus he allegedly participated in the conspiracy.

The trial court correctly granted Sell's motion to dismiss the claim against him. Sell submitted an affidavit to support his assertion that his only role in the events was to contact Davenport and inform her that Smith was the subject of a criminal investigation. Smith has produced no admissible evidence to establish that Sell had any further personal involvement in the parole revocation. And, once again, § 1983 does not create a claim based on collective or vicarious responsibility. *See Pacelli,* 972 F.2d at 875; *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994).

In a related issue, Smith also challenges the court's "suppression" of his Exhibit A1. That exhibit consisted of a memo from Grogan to Sell, which states that "if [Sell] can get [Smith's] agent to put a hold on him, please notify the bureau." According to Smith, because Davenport submitted the document into evidence at Smith's revocation hearing, it should be admissible.

In its May 2007 order, the trial court ruled that this document was inadmissible because it was not properly authenticated. FED. R. CIV. P. 56(e); *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006). But even if the document were admissible it would not defeat summary judgment for Sell. Davenport testified that a parole hold is issued when a parolee violates the terms of parole, not upon the request of police. Davenport also testified that her decision to revoke Smith's parole "was not driven by the police," and that "the police didn't make that decision for us." The memo in question, therefore, proves nothing against Sell.

Finally, Smith takes issue with the trial court's grant of summary judgment to Grogan in December 2007. We disagree and hold that the court properly granted Grogan's motion for summary judgment. Putting aside the disputed issue of whether Grogan had any personal involvement in Smith's arrest, Grogan, as a fellow police officer, is immune from liability for the same reason as Gomez: Smith's arrest was supported by probable cause.

AFFIRMED.