**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 17, 2014[*]
Decided July 18, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-3841

| | |
|---|---|
| GLORIA K. O'SHELL, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Southern District |
| | of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:10-cv-01660-LJM-DML |
| MICHAEL B. CLINE, and | |
| DANIEL L. HACKLER, | Larry J. McKinney, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Gloria O'Shell, a lawyer who worked as an auditor for the Indiana Department of Transportation, contends that the Department fired her for reporting that it had wrongly disbursed federal funds. Invoking various constitutional and statutory provisions, she has sued Michael Cline, the Commissioner of the Department, and

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Daniel Hackler, the Director of the Indiana State Personnel Department. She pursues them in their official capacities (through which she seeks damages from the State of Indiana) and in their personal capacities. The district court granted summary judgment, reasoning that sovereign immunity barred the official-capacity claims and the other claims were time-barred, defective for lack of personal involvement, or addressed to the wrong defendant. That analysis was correct, so we affirm.

O'Shell began working for the Department of Transportation in 2001, but the events giving rise to this lawsuit began in early 2007, when the Department gave O'Shell an "unsatisfactory" performance rating. She sought administrative review of that rating, but the State Employees' Appeals Commission ruled that it did not have jurisdiction to consider her petition because she was an at-will employee and had not been fired, demoted, disciplined, or transferred. *See* IND. EXEC. ORDER 05-14. The Indiana Court of Appeals affirmed that ruling. *O'Shell v. Ind. State Employees' Appeals Commission*, 908 N.E.2d 1278 (Ind. Ct. App. 2009) (Table).

Next, during an audit in late 2008, O'Shell discovered what she alleges were irregularities in the disbursement of federal highway funds. She tried to report her discoveries to her superiors, but, she asserts, they asked her to change her report to omit them. She complained by email about this request to several Transportation Department administrators and to one employee in the state Attorney General's office. She told them that her audit uncovered violations of the federal and state False Claims Acts and that to hide them would run afoul of the law. Soon after, on December 19, 2008, the Department decided to fire O'Shell, but she was allowed to resign in order to preserve her accrued vacation and sick leave. (O'Shell sought administrative review of her discharge, but, for reasons not in the record, the Appeals Commission has not responded to her petition, and neither party argues that this inaction is significant.)

O'Shell's next step was this lawsuit. Invoking 42 U.S.C. § 1983, she contends that the defendants violated the Fourteenth Amendment in their handling of the 2007 performance review, in firing her, and by coordinating an effort to make sure she never again works for the State of Indiana. She also asserts that they violated her First Amendment rights by firing her for speaking out about possible fraud in highway contracts. Those same allegations underlie her statutory claims, which she brings under the anti-retaliation provision of the federal False Claims Act, 31 U.S.C. § 3730(h), and Indiana's counterparts to that Act, IND. CODE §§ 4-15-10-4, 5-11-5.5-8.

On the defendants' motion to dismiss, the district court dispatched most of O'Shell's claims. First, citing sovereign immunity, it dismissed all claims brought against the defendants in their official capacities. Then the court addressed the personal-capacity, constitutional claims. With respect to the Fourteenth Amendment, the court saw two claims. The first challenged a lack of due process in O'Shell's 2007 performance review and the ensuing administrative appeal; the court ruled that this claim was time-barred and any review of the related Indiana Court of Appeals decision would transgress the *Rooker-Feldman* doctrine. The second claim asserted that the discharge occurred without due process; the court rejected this claim because O'Shell failed to allege personal involvement on the part of either defendant. Finally, the court dismissed her First Amendment claim, explaining that speech made by a public employee in her capacity as a public employee receives no constitutional protection.

The district court later granted summary judgment to the defendants on the personal-capacity claims brought under the false-claims statutes. It decided that, because the defendants in their personal capacities were not O'Shell's "employer" within the meaning of the federal False Claims Act, they were entitled judgment on the claim. O'Shell's claims under Indiana's counterpart law failed for the same reason and for two others: state law did not criminalize the misappropriation of federal funds and the Department of Transportation was not a "person" amenable to suit.

O'Shell's principal argument on appeal is that she may pursue official-capacity claims under the federal False Claims Act because Congress has abrogated Indiana's sovereign immunity. She points to 42 U.S.C. § 2000d-7, a provision of Title VI of the Civil Rights Act of 1964. That provision abrogates state sovereign immunity for, as relevant here, suits involving any "Federal statute prohibiting discrimination by recipients of Federal financial assistance." O'Shell contends that the False Claims Act, which in part prohibits discriminating against whistleblowing employees, falls into § 2000d-7's catchall provision. Her argument is a loser for two reasons.

First, the Supreme Court has held that the federal False Claims Act does not permit suits against states or their agencies. *See Vermont Agency of Natural Resources v. United States* ex rel. *Stevens*, 529 U.S. 765, 787–88 (2000). (The same is true of O'Shell's § 1983 claims. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–67 (1989).) That the Department of Transportation was O'Shell's employer makes no difference. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984); *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001).

Second, Congress may validly abrogate a state's sovereign immunity only by using the enforcement powers granted to it by the Civil War amendments. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64–66 (1996). O'Shell correctly points out that Title VI was an exercise of Congress's Fourteenth Amendment enforcement authority, *see Fuller v. Rayburn*, 161 F.3d 516, 518 (8th Cir. 1998); *DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 688–89 (11th Cir. 1997), but that is beside the point. The False Claims Act was passed, in its original form, before those amendments were ratified. *See Stevens*, 529 U.S. at 781–82; *United States v. Bornstein*, 423 U.S. 303, 309 (1976). Therefore, in enacting that law, Congress could not possibly have used powers that it did not yet have.

Next, with respect to her official-capacity claims under Indiana's counterpart to the federal False Claims Act, O'Shell asserts that Indiana has waived its sovereign immunity. She relies on IND. CODE 8-23-2-5(c), which waives immunity for the "willful violation" of rules created to manage the right-of-way of the state highway system. But a waiver of sovereign immunity in one context does not operate as a waiver in other contexts. *Sossamon v. Texas*, 131 S.Ct. 1651, 1658 (2011). And Indiana state law expressly preserves sovereign immunity in false-claims suits. IND. CODE 5-11-5.5-7(d).

O'Shell also challenges the district court's dismissal of her § 1983 claim against the defendants in their personal capacities. With respect to the First Amendment claim, the district court's conclusion that O'Shell's speech does not merit First Amendment protection is correct. The First Amendment does not shield O'Shell from personnel action for speech that she made to fulfill her duties as a public employee. *See Lane v. Franks*, 134 S. Ct. 2369, 2378–80 (2014); *Garcetti v. Ceballos*, 547 U.S. 410, 418–20 (2006). As an auditor, O'Shell's job was to report observed financial improprieties. On appeal she does not contend that she was speaking as a citizen when she reported the discrepancies that she uncovered during her audit, an omission that defeats her claim. *See Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007). In any case, her First Amendment claim was untimely: She was notified of her discharge, the relevant date for this claim, *see Rankin v. McPherson*, 483 U.S. 378, 383–84 (1987); *Valentino v. Vill. of South Chicago Heights*, 575 F.3d 664, 671 (7th Cir. 2009), on December 19, 2008. O'Shell brought suit on December 20, 2010—one day after the statute of limitations had run on her claim. *See Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013) (two-year statute of limitations for § 1983 actions arising in Indiana).

Finally, O'Shell challenges the district court's disposition of her Fourteenth Amendment challenge. The district court construed that claim to allege only that the defendants violated due process with respect to their handling of her 2007 performance

review and discharge, and it correctly decided that those claims fail as untimely or for lack of personal involvement. But we think that the district court overlooked another aspect of O'Shell's Fourteenth Amendment claim: O'Shell also contends that, after rankling her superiors with her attempts to reveal her audit observations, they have been "blackballing" her from any job with a state agency. Because, O'Shell contends, the defendants continue to blackball her, she concludes that this claim is timely.

But even if timely, this claim comes to naught because O'Shell fails to allege plausibly that either defendant was personally involved in the blackballing, as is required to hold them liable under § 1983. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). O'Shell makes no appellate argument about personal involvement with respect to Cline, but she does seek to hold Hackler responsible because he oversees the actions of those state employees who are blackballing her. That allegation of supervisory authority, however, is insufficient to raise a plausible inference that Hackler personally intervened to deny her employment at every turn, *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and § 1983 does not permit vicarious liability, *Iqbal*, 556 U.S. at 676; *Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008). Thus, the claim fails.

We have considered O'Shell's remaining arguments regarding the personal-capacity claims under the false-claim statutes, but they lack merit for the reasons that the district court gave and require no further discussion. The judgment is **AFFIRMED**.