In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

Nos. 15-2295, 15-2303 & 16-3556

THORNCREEK APARTMENTS III, LLC, a foreign limited liability
company d/b/a The Lofts at Thorncreek,

*Plaintiff-Appellee/*
*Cross-Appellant,*

and

THORNCREEK MANAGEMENT, LLC,

*Plaintiff-Appellee,*

*v.*

TOM MICK,

*Defendant-Appellant/*
*Cross-Appellee.*

———————————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 1225 — **Gary Feinerman**, *Judge.*

———————————

Nos. 15-2296, 15-2302 & 16-3555

VILLAGE OF PARK FOREST,

*Plaintiff-Appellant/*
*Cross-Appellee,*

and

TOM MICK,

*Third-Party Defendant-Appellant/*
*Cross-Appellee,*

and

MAE BRANDON, *et al.*,

*Third-Party Defendants/*
*Cross-Appellees,*

*v.*

THORNCREEK APARTMENTS II, LLC,

*Defendant-Appellee/*
*Cross-Appellant,*

and

ATLANTIC MANAGEMENT CORPORATION,

*Defendant-Appellee.*

————————————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 0869 — **Gary Feinerman**, *Judge.*

————————————

Nos. 15-2298, 15-2304 & 16-3557

THORNCREEK APARTMENTS I, LLC,

*Plaintiff-Appellee/*
*Cross-Appellant,*

and

THORNCREEK MANAGEMENT, LLC,

*Plaintiff-Appellee,*

*v.*

TOM MICK, individually and as Village Manager for the
Village of Park Forest,

*Defendant-Appellant,*

and

VILLAGE OF PARK FOREST, *et al.*,

*Defendants/
Cross-Appellees.*

————————————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 4303 — **Gary Feinerman**, *Judge.*

————————————

ARGUED MAY 18, 2017 — DECIDED MARCH 27, 2018

————————————

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* These consolidated appeals
challenge various aspects of a judgment entered on a split
jury verdict in a long-running dispute between the Village of
Park Forest, Illinois, and Thorncreek Apartments, a large
housing complex located in the Village. Thorncreek accused
village officials of engaging in a campaign of regulatory
harassment based on personal animus against its owner and
because many of its residents are black. Thorncreek sued the
Village and ten officials for compensatory and punitive
damages under several federal and state civil-rights laws.

After a 13-day trial, jurors returned a partial verdict for
Thorncreek. The Village and its manager were found liable
under 42 U.S.C. § 1983 for a class-of-one equal-protection
violation, and the village manager and director of communi-
ty development were found liable for conspiracy in violation

of 42 U.S.C. § 1985(3). In all other respects, the jury sided with the defendants.

Ruling on postverdict motions, the district court tossed out the jury's liability finding against the community-development director but otherwise approved the verdict and entered judgment accordingly. The judge also granted Thorncreek's motion for prejudgment interest and attorney's fees, though the award of fees was approximately one-third of what was requested.

Both sides appealed, raising assorted challenges to the judge's posttrial rulings on damages, prejudgment interest, and attorney's fees. We find no error and affirm.

## I. Background

Thorncreek is a large townhouse complex nestled in the Village of Park Forest, a suburb southeast of Chicago that straddles both Cook County and Will County. In 1989 Thorncreek was sold to Atlantic Limited Partnership XX, a Michigan partnership largely owned by David Clapper, its general partner. Clapper later reorganized the property into three separate limited liability corporations: Thorncreek Apartments I, LLC; Thorncreek Apartments II, LLC; and Thorncreek Apartments III, LLC. Each corporation operated a different part of the complex: Thorncreek I ("Area F"), Thorncreek II ("Area G"), and Thorncreek III ("Area H"). We refer to the three corporations collectively as "Thorncreek" unless the context requires otherwise.

In 2007 Atlantic Limited sold Thorncreek I for roughly $16 million. The leasing office for the entire complex was located in a townhouse in Area F, so the sale caused a logistical problem. Thorncreek's management company proposed to relocate the leasing office to a vacant townhouse in

Area G, which was owned and operated by Thorncreek II. The move required a conditional use permit, so in February 2007 Thorncreek II applied to the Village for a permit to use the vacant townhouse as a business office. In the meantime, however, Thorncreek began to conduct its business operations from the Area G townhouse without waiting for action on the permit application. The Village responded by citing Thorncreek II for zoning violations and operating without the required permit.

In December 2007 the Village filed suit in state court against Thorncreek II and Atlantic Limited to halt the zoning and operating violations arising from the unpermitted leasing office and also to redress certain building-code violations. Thorncreek II removed the suit to federal court, but a district judge quickly sent it back to state court for lack of subject-matter jurisdiction. A later removal was successful; Thorncreek II counterclaimed against the Village and ten village officials raising a host of federal and state civil-rights violations. In February 2008 Thorncreek III filed its own federal lawsuit raising substantially similar claims.

Two months later Fannie Mae filed foreclosure notices with the Cook County Recorder of Deeds against Thorncreek II and III. Thorncreek blamed its predicament on the Village's regulatory overreach. In July 2008 Thorncreek I joined the legal battle by filing its own federal suit alleging similar civil-rights violations.

In essence, all three suits alleged that the Village violated Thorncreek's constitutional rights by denying its application for a business license, interfering with business operations, refusing to grant the application for a conditional use permit, failing to issue a certificate of occupancy, and unequally enforcing a building-code provision requiring electrical

upgrades. A single district judge took charge of all three suits, consolidating them for summary judgment and, if necessary, a trial.

As originally pleaded, the case was sprawling. Thorncreek brought claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 seeking compensatory and punitive damages for alleged due-process, equal-protection, and Takings Clause violations; conspiracy; and failure to prevent a civil-rights conspiracy. Thorncreek also tacked on claims under the Illinois Civil Rights Act, 740 ILL. COMP. STAT. § 23/5.

The judge trimmed the case a bit on summary judgment, but even as narrowed the case remained unwieldy. Three groups of claims were tried to a jury over 13 days: (1) § 1983 claims against the Village and nine officials for class-of-one and race-based equal-protection violations; (2) claims under §§ 1985 and 1986 against the same nine officials for conspiracy and failure to prevent a civil-rights conspiracy; and (3) claims against the Village under the Illinois Civil Rights Act. The basic theory of the case was that the defendants caused Thorncreek's mortgage default and foreclosure by singling it out for unfair regulatory action (and inaction) based on irrational animus against Clapper and racial bias against its black residents.

Thorncreek prevailed in part. The jury found the Village and Village Manager Tom Mick liable for a class-of-one equal-protection violation. The jury also found Mick and Larrie Kerestes, the director of community development, liable for conspiracy in violation of § 1985(3). The jury cleared the other defendants on these two claims and exonerated all defendants on the remaining claims. On the issue of damages, the jury awarded $2,014,000 in compensatory damages to Thorncreek II but only $1 in nominal damages to

Thorncreek I and III. Finally, the jury awarded punitive damages against Mick and Kerestes in the amounts of $5,000 and $1,000, respectively.

Thorncreek moved for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure but only on the issue of damages. The motion raised several claims of error. The judge rejected each one and denied relief. Thorncreek also asked for prejudgment interest on the jury's award of compensatory damages. The judge granted that request.

Mick and Kerestes both moved for judgment as a matter of law under Rule 50(b). The jury's verdict against Kerestes was limited to the § 1985(3) conspiracy claim, but that statute requires a predicate race-based or class-based equal-protection violation. Because the jury cleared all of the defendants on the race-based equal-protection claim, the judge held that the verdict against Kerestes on the § 1985(3) claim could not stand.

Mick's situation was different. His Rule 50(b) motion challenged only the jury's finding on the § 1985(3) conspiracy claim; he did not attack the jury's liability finding against him on the class-of-one equal-protection claim. So the judge saw no reason to disturb the verdict as to him and denied his motion. With these adjustments, the judge entered judgment on the verdict.

Thorncreek later moved for an award of attorney's fees and nontaxable costs under 42 U.S.C. § 1988. The judge granted the motion and awarded $430,999.25 in fees and $44,844.33 in costs. The award of fees was about one-third of what Thorncreek requested.

Both sides appealed, reprising many of the arguments raised in the posttrial litigation.

## II. Analysis

### A. Mick's Motion for Judgment as a Matter of Law

Mick challenges the denial of his motion for judgment as a matter of law. He argues that he deserves the same treatment as his codefendant Kerestes because the jury's finding of liability on the § 1985(3) conspiracy claim is invalid without a predicate race-based or class-based equal-protection violation. That's a correct statement of settled law. *See, e.g.,* *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law … , but the conspiracy must be motivated by racial, or other class-based discriminatory animus." (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971))). But it does not follow that Mick, like Kerestes, is entitled to judgment as a matter of law.

It's true that the jury's verdict on the § 1985(3) claim was flawed as to *both* defendants. The jurors rejected the race-based equal-protection claim in toto, so there's no underlying race-based equal-protection violation to support conspiracy liability under § 1985(3). But the jury found Mick and the Village liable on Thorncreek's § 1983 claim alleging a class-of-one equal-protection violation and awarded more than $2 million in compensatory damages. Mick did not challenge this part of the verdict in his Rule 50(b) motion. The compensatory-damages award on this claim is plainly sufficient to support the $5,000 punitive-damages award against him. So although the jury's verdict on the § 1985(3) claim was defective, there's nothing wrong with the *judgment*, which Mick does not otherwise challenge. The judge properly denied his motion for judgment as a matter of law.

## B. Thorncreek's Motion for a New Trial on Damages

Thorncreek asks us to order a new trial on the limited issue of damages. Its primary argument is that the judge impermissibly admitted prejudicial references to Clapper's wealth that influenced the jury's assessment of damages. Thorncreek also attacks the jury decision to award only nominal damages to Thorncreek I and III.

### 1. *Prejudicial Evidence*

"Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Suggs*, 374 F.3d 508, 516 (7th Cir. 2004) (quotation marks omitted). We review claims of evidentiary error for abuse of discretion. *Smith v. Hunt*, 707 F.3d 803, 807 (7th Cir. 2013). Because the trial judge is in a superior position to evaluate the impact of contested testimony or other evidence, we give special deference to the judge's evidentiary rulings. *Suggs*, 374 F.3d at 516. And to warrant a new trial, an evidentiary error must affect the losing party's substantial rights—that is, there must be a significant chance that the flawed ruling affected the outcome of the trial. *Smith*, 707 F.3d at 808.

The parties submitted some 26 or 27 motions in limine seeking to limit the opposition's evidentiary submissions. One of Thorncreek's pretrial motions pertained to evidence of Clapper's wealth, which Thorncreek insisted should be off limits. The judge agreed and excluded evidence of Clapper's wealth or financial status. Thorncreek maintains that the defense attorney violated this ruling several times, tainting the jury on the question of damages. The judge was not persuaded. Neither are we.

Thorncreek's main complaint centers on a brief moment during the trial when defense counsel was cross-examining a witness about a phone conversation with Clapper. Counsel asked if the witness knew where Clapper was during the call. The witness replied that he was "either in his offices in Michigan, or he was on his boat in the Mediterranean."

The judge instructed the jury to disregard the testimony, and we assume that jurors follow such instructions. *Solyts v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008). To overcome this presumption, the complaining party must establish "an overwhelming probability" that the jury was "unable to disregard inadmissible evidence" and also "a strong likelihood of a devastating effect from the evidence." *Turner v. Miller*, 301 F.3d 599, 604 (7th Cir. 2002). Thorncreek has not shown that this stray snippet of testimony had any sort of effect—much less a devastating effect—on the jury.

Other oblique references to Clapper's wealth occurred during defense counsel's closing argument, but Thorncreek did not object. Ordinarily "a definitive ruling *in limine* preserves an issue for appellate review, without the need for later objection." *Wilson v. Williams*, 182 F.3d 562, 563 (7th Cir. 1999). But that rule doesn't apply to claimed *violations* of a judge's in limine rulings; an objection is generally required to preserve appellate review of an alleged violation of a pretrial ruling. And here the judge reminded the parties to object to any violations of his rulings on motions in limine and instructed them to be specific about the grounds.

More specifically, after the witness's "boat in the Mediterranean" reference, the judge called a break, made a record of what happened, and instructed the lawyers as follows:

What I'll say in response is there were 26 or 27 motions *in limine,* so -- and with some prior objections, the objection said, "ruling on the motion *in limine,*" and that prompts me to think about the motion *in limine*. …

If you want to rely on a motion *in limine* -- a ruling on a motion *in limine* in making an objection, you've got to tell me because it isn't like -- if we had one or two or three motions *in limine*, it would be different, but we had 26 or 27.

… .

[Y]ou really have to state the basis for the objection when you make the objection.

… .

[I]n the future, if you do want -- both sides, if you want to rely on a motion *in limine* ruling in making an objection, just say, "motion *in limine* ruling." Obviously don't get into the details of the motion *in limine*, because again, that would defeat the point of having the motion *in limine*.

The judge's instructions could not have been clearer: To preserve a challenge to any further violations of his rulings on motions in limine, the parties had to object. Thorncreek did not do so with respect to defense counsel's passing references to Clapper's wealth during closing argument. That's a waiver. *Venson v. Altamirano*, 749 F.3d 641, 657 (7th

Cir. 2014); *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).[1]

Thorncreek argues for the first time in its reply brief that we should review the unpreserved errors under the plain-error standard. Plain-error review is rarely applied in civil cases and is available only if "(1) exceptional circumstances exist[]; (2) substantial rights are affected; and (3) a miscarriage of justice will occur if plain error review is not applied." *Willis v. Lepine*, 687 F.3d 826, 839 (7th Cir. 2012) (quotation marks omitted). Thorncreek's plain-error argument fails for multiple reasons. For starters, "arguments raised for the first time in a reply brief are waived." *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014). And Thorncreek has not shown either exceptional circumstances or a miscarriage of justice. Thorncreek won more than $2 million in damages, which suggests that the jury was not put off by any references to Clapper's wealth.[2]

---

[1] Thorncreek suggests that not interrupting closing argument was part of its own counsel's trial strategy. Maybe so, but that doesn't make a difference in the analysis. "Perhaps defendant-appellant feared that a contemporaneous objection would incur hostility from the jury. This court need not speculate as to the nature of defendant-appellant's motives. Suffice it to note, however, that risky gambling tactics such as this are usually binding on the gambler." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 445 (7th Cir. 2010) (quoting *Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 298 (7th Cir. 1985) (per curiam)).

[2] Before we leave the subject of Clapper's wealth, we pause to note an additional argument Thorncreek raises, though it's so plainly meritless that we could let it go unmentioned. Thorncreek takes issue with the highlighted parenthetical in this passage from the judge's written decision on posttrial motions:

> Before trial, Thorncreek moved *in limine* to bar, among other things, any references to or evidence regarding the

Thorncreek next argues that its financial records pre-dating 2005 should not have been admitted at trial. This argument rests entirely on a ruling by a magistrate judge concerning a discovery dispute. The magistrate judge saw a need to limit the scope of discovery, so he ordered that "[e]xcept for specific interrogatories and document requests identified on the record, the interrogatories and document requests are limited to the time period of 01/01/05 to the present."

But the documents at the center of Thorncreek's argument are *publicly available* financial records pertaining to the housing complex. The defense expert incorporated this material into his final damages opinion, and the defense disclosed the documents to Thorncreek about two months before trial, explaining that the pre-2005 public records were additional support for the expert's opinion. The defense even offered to produce the expert for another deposition. Thorncreek declined the offer.

wealth and personal financial status of David Clapper, Thorncreek's principal owner. Doc. 258. **(Clapper apparently is a wealthy man. *See* Kaya Morgan, *David Clapper—Success Runs Deep*, http://www.island connections.com/edit/clapper.htm (last visited May 17, 2015), which appears to be a puff piece about Clapper authored by a publicist, which refers to Clapper as a "Michigan business tycoon," which shows photographs of Clapper with, among others, the first President Bush, Pope John Paul II, and Kevin Nealon, and which was not offered or admitted into evidence at trial.)** The Village did not oppose the exclusion of such evidence, Doc. 272, and the court granted the motion in relevant part, Doc. 377.

(Emphasis in bold added.) This harmless aside is hardly reversible error.

Thorncreek now cries foul, relying on Rule 26(a), but its objection is way off the mark. Rule 26(a) says that "[a]bsent a stipulation or *a court order*," expert testimony must disclosed at least 90 days before the date set for trial. FED. R. CIV. P. 26(a)(2)(D)(i) (emphasis added). Here the judge specifically allowed the defense to submit the modified expert report two months before trial. There was no Rule 26 violation, and the judge did not otherwise abuse his discretion in admitting the publicly available pre-2005 financial records.

### 2. *Challenge to Nominal Damages Awards*

"[W]e do not readily overturn a damage award when the trial court has denied the plaintiff's motion for a new trial." *Rosario v. Livaditis*, 963 F.2d 1013, 1020 (7th Cir. 1992). We will do so only "when the jury's verdict is contrary to reason and the trial court's denial of a new trial on damages is an abuse of discretion." *Id.*

The jury awarded a substantial sum of money—more than $2 million—to Thorncreek II but only nominal damages of $1 each to Thorncreek I and III. Thorncreek insists that the awards are inconsistent and contrary to reason. Not so. Based on the evidence adduced at trial, the jury rationally treated the three Thorncreek entities differently.

Thorncreek I originally housed the apartment leasing office and was sold for roughly $16 million in 2007 before most of the events in question occurred. True, the sale necessitated the relocation of the business office, which spawned the fight over regulatory approval of the conditional use permit. Regardless, although Thorncreek's expert testified that the $16 million price was too low, the defense expert said it was just right and no damages accrued. The jury was entitled to accept the latter's testimony.

Thorncreek II, for its part, was uniquely affected by the run-ins with the Village. The Village unequally enforced an electrical-upgrade ordinance against Area G. And the Village sued Thorncreek II to enforce the electrical-upgrade ordinance and to shutter the illegal leasing office set up in the Area G townhouse after the sale of Thorncreek I. Finally, the jury heard evidence that before the foreclosure Thorncreek II was set to be sold to a third party and that but for the Village's interference, the sale would have been consummated. Indeed, it appears that the jury took the contract value of the property and subtracted the mortgage amount to arrive at its compensatory-damages award.

Thorncreek III, on the other hand, was not subjected to harassment over electrical upgrades like Thorncreek II was, and it did not face an enforcement action by the Village in state court. The record supports the jury's decision to treat each Thorncreek plaintiff differently when assessing damages. The judge properly denied Thorncreek's motion for a new trial.

## C. Prejudgment Interest

The Village challenges the judge's decision to award prejudgment interest on the verdict. We held long ago that prejudgment interest is "presumptively available to victims of federal law violations." *Gorenstein Enters., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Prejudgment interest serves dual purposes: to fully compensate the plaintiff and to minimize a defendant's incentive to delay. *Id.* But it is not the same as punitive damages; prejudgment interest is not meant to penalize the party who caused the injury. *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1247 (7th Cir. 1995).

Accordingly, a prevailing plaintiff can't double dip by providing the jury with a damages estimate that includes interest *and also* moving for prejudgment interest. When a plaintiff provides evidence of damages that includes interest, the presumption flips and the judge will presume that the jury included the interest in its award. *Id.*

The damages estimates Thorncreek submitted to the jury included prejudgment interest. So the judge properly started with the presumption that Thorncreek was *not* entitled to prejudgment interest. But he found the presumption rebutted and granted the request for prejudgment interest. We review that decision for abuse of discretion. *First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971, 981 (7th Cir. 2007).

The judge concluded that the jury calculated its compensatory-damages award by simply subtracting the mortgage debt on Thorncreek II from its value—a figure that the judge said "result[ed] from simple subtraction, [and] did not include prejudgment interest." In its motion for a new trial, the Village embraced this interpretation as a plausible reading of the verdict. That concession takes most of the wind out of the Village's sails.

For completeness, however, we note that the jury heard evidence that a willing buyer offered to purchase Thorncreek II for $11 million. The jury also heard evidence that the original mortgage on Thorncreek II was $8,960,000 and $8,466,945.55 of the principal on the mortgage remained unpaid. Simple subtraction results in a range of damages between $2,004,000 and $2,533,054.45. The actual compensatory-damages award—$2,014,000—fits squarely within that range.

Thorncreek's expert offered an estimate of prejudgment interest in the range of $1,311,163 to $1,641,861. Under the circumstance it's highly improbable that the jury incorporated prejudgment interest in its ultimate award, and the Village has not given us a good reason to think that it did. We see no error in the judge's award of prejudgment interest.

## D. Attorney's Fees

For claims brought under § 1983, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The statute's use of the word "may" commits the award of fees to the district court's discretion. Thorncreek challenges the judge's decision to substantially reduce the amount of fees it requested. Our review is deferential, for abuse of discretion only. *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999).

The reasonableness of an award of fees is fundamentally determined by "the degree of the plaintiff's overall success." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 793 (1989)). Ordinarily a reasonable fee is calculated under the lodestar method by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). The judge performed that calculation here and reached a lodestar figure of $1,292,997.75.

But the lodestar figure is just the "starting point." *Estate of Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). And though it is presumptively reasonable, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010), the figure may be excessive when "a plaintiff has achieved only partial or

limited success," *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In making this determination, the district court considers the claims on which the party did not prevail, the size of the monetary award, and any social benefits not reflected in a small damages award. *Estate of Enoch*, 570 F.3d at 824.

If a plaintiff recovers only nominal damages, the "reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115. Three factors help determine whether attorney's fees are appropriate in a nominal-damages case: "(1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation." *Johnson v. Daley*, 339 F.3d 582, 609 (7th Cir. 2003).

The judge properly applied these general principles here. He first noted that the jury awarded only nominal damages to two of the three Thorncreek entities. Thorncreek I and III sought a combined total of $12.5 million but received a combined total of $2. The judge also considered that the issues in the litigation were primarily factual rather than legal. And, finally, the public purpose of the litigation was minimal. Though the vindication of constitutional rights is always important, "attorney's fees are appropriate … only when the plaintiff's victory entails something more than merely a determination that a constitutional guarantee was infringed." *Maul v. Constan*, 23 F.3d 143, 146 (7th Cir. 1994). The judge reasonably concluded that the necessary "something more" was missing here.

On the other hand, Thorncreek II won a substantial sum from the jury, though not close to what it sought. It asked for $8 million; the jury awarded just over $2 million. Still, it's a sizeable award, and the judge properly noted the point. And

he did not "make the mistake of limiting the fee to some multiple of the judgment, which would have been reversible error." *Montanez v. Simon*, 755 F.3d 547, 557 (7th Cir. 2014).

In the end, there is no algorithm "for adjusting a lodestar to reflect partial or limited success." *Id.* The trial judge "has broad discretion to determine the appropriate reduction" and "is in a better position to assess … whether a … judgment is a spectacular success, a dismal failure, or something in between." *Id.* Here the judge reasonably exercised his broad discretion to reduce the requested fees. Two of the three Thorncreek entities won only nominal damages. Thorncreek achieved a partial victory against the Village and Mick on a single claim but lost on all the others, and the nine remaining defendants were completely exonerated. Thorncreek sought a combined total of $20.5 million in damages but won a fraction of that amount, though at just over $2 million it's unquestionably a substantial sum. After considering all the relevant factors, the judge declined to approve a lodestar recovery and settled on a fee award of approximately $475,000. That decision was sound.

AFFIRMED.