In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 19-3363

CHRISTOPHER HARRIS,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cv-03105-JMS-DML — **Jane Magnus-Stinson**, *Judge.*

———————————

ARGUED JUNE 3, 2021 — DECIDED SEPTEMBER 10, 2021

———————————

Before MANION, WOOD, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Christopher Harris faced federal drug charges. Counsel advised him that his two prior Indiana cocaine convictions were predicate "felony drug offenses" and could result in a mandatory life sentence. So, Harris entered into a plea agreement and received an agreed-upon 20-year sentence.

Harris now seeks federal habeas corpus relief under 28 U.S.C. § 2255. He argues his counsel was ineffective by not challenging whether those prior drug convictions were predicates, as Indiana law defined cocaine isomers more broadly than federal law. Such an argument, novel then, would succeed today.

Although Harris forfeited this theory of ineffectiveness in the district court, we conclude that it is subject to plain-error review. But because it was objectively reasonable for Harris's counsel not to advise risking a mandatory life sentence to pursue the isomer argument, the district court did not plainly err in ruling that counsel's performance was constitutionally adequate.

## I

Harris was charged in 2016 with possessing with intent to distribute 50 grams or more of methamphetamine. *See* 21 U.S.C. § 841(a)(1) (2010). Because of his prior drug convictions, Harris faced significant sentencing exposure. At the time, the statutory minimum sentence for this crime was 10 years. *Id.* § 841(b)(1)(A)(viii) (2010). But under that statute, the government could enhance the potential sentence by arguing that two of Harris's prior convictions were felony drug offenses: an Indiana conviction in 2006 for dealing cocaine, *see* IND. CODE § 35-48-4-1(a) (2006), and an Indiana conviction in 2001 for possessing cocaine, *see id.* § 35-48-4-6(a) (2001). At that time, one prior "felony drug offense" increased the mandatory minimum sentence to 20 years, while two required a life sentence. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (2010).

To avoid a life sentence, Harris reached an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) with the

government to plead guilty and accept a sentence of 20 years' imprisonment. Pursuant to that deal, the government filed a notice under 21 U.S.C. § 851 listing only one predicate offense, the 2006 Indiana conviction for dealing cocaine. At a joint change-of-plea and sentencing hearing in October 2017, the district court confirmed that "the basis" for Harris's plea was his (and his counsel's) understanding that he was avoiding a mandatory life sentence due to the government's agreement not to introduce his 2001 Indiana cocaine possession conviction. The court also confirmed that Harris knew he was waiving his right to challenge his conviction and sentence, except as to ineffective assistance of counsel.

Harris did not appeal. Instead, acting pro se, he timely moved to vacate his sentence pursuant to § 2255. Harris asserted his counsel had been ineffective "during plea bargaining for the failure to challenge the § 851 enhancement towards the prior dealing in cocaine case." In his petition, Harris attempted to explain:

> Thomas Brodnick represented me during plea negotiations. My prior 2006 conviction for dealing in cocaine or narcotic was used to enhance my sentence under the statute from 10-years to 20-years minimum. This conviction was from when I was set up to bring someone some drugs when in fact, I was set up to be robbed. I had to fight for my life were [*sic*] I could have died if I did not defend myself. The State Statute 35-48-4-1 was used under Indiana state laws and the case was converted to have me plead guilty to dealing in cocaine or narcotic and the possession cocaine of [*sic*] narcotic and dealing in

> cocaine or narcotic was dismissed by the State
> for my plea of guilty.

The government read this submission as an argument that Harris's counsel should have challenged the sufficiency of the evidence supporting the 2006 conviction. In reply, Harris reiterated his initial statements and asserted that his 2006 conviction "is not permissible to be used because of its unconstitutional nature in light of *Descamps v. United States*, 570 U.S. 254 (2013)."

The district court denied Harris's § 2255 motion. To that court, Harris had raised two theories of ineffective assistance: that his counsel should have (1) challenged the sufficiency of the evidence underlying his prior state conviction, and (2) argued that conviction did not qualify as a predicate offense after *Descamps*. The first theory failed because a defendant cannot collaterally attack a state conviction during federal sentencing unless it was obtained in a proceeding where the defendant was denied his right to counsel, which Harris did not allege. *See Custis v. United States*, 511 U.S. 485, 496–97 (1994). On the second theory, the district court decided that a *Descamps*-based argument would have failed at sentencing because Harris's 2006 Indiana conviction for dealing cocaine fell within the definition of a "felony drug offense." That conviction was based "on conduct relating to narcotic drugs" and was punishable by a minimum of six years in prison.

Soon after judgment, two legal developments clarified whether Harris's prior convictions fit the definition of a "felony drug offense." First, in *United States v. De La Torre*, 940 F.3d 938, 952 (7th Cir. 2019), this court held that a different Indiana drug crime was not a "felony drug offense" because the state's definition of the controlled substance involved—

including, among other terms, its definition of an "isomer"—applied more broadly than federal law. Less than a year later, this court decided in *United States v. Ruth*, 966 F.3d 642, 647, 650 (7th Cir. 2020), that an Illinois conviction for possession with intent to deliver cocaine was not a "felony drug offense" because Illinois's definition of cocaine—like Indiana's—included optical, positional, and geometric isomers, and therefore was broader than federal law.

Harris requested a certificate of appealability, which this court granted, as to whether his counsel was ineffective for failing to argue that his prior conviction did not qualify as a predicate "felony drug offense" because IND. CODE §§ 35-48-1-7 and 35-48-2-8(b) (2006) defined cocaine more broadly than the federal code, 21 U.S.C. §§ 802(17)(C)(D). The parties were also asked to address whether Harris waived this theory of ineffectiveness by insufficiently developing it in the district court.

## II

### A

Section 2255 provides relief for a federal prisoner if their sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013)).

When considering the denial of a federal prisoner's § 2255 motion, we typically review the district court's legal conclusions de novo. *Reyes v. United States*, 998 F.3d 753, 757 (7th Cir. 2021). But in the district court, Harris did not properly present the theory of ineffective assistance that he pursues before us. His opening motion was barely comprehensible; at most, it asserted that counsel was ineffective because he should have challenged his 2006 conviction, but it provided no clear basis for a challenge.

Harris did raise the *Descamps*-based argument in his reply brief, however. He says his citation to *Descamps*—which requires that a state predicate offense fall within the federal definition—simply "clarified" the claim he raised initially in his § 2255 motion. But that did not preserve the issue for appeal. A movant must present his specific theory of ineffectiveness in the district court, *see Rittenhouse v. Battles*, 263 F.3d 689, 694–95 (7th Cir. 2001), with enough detail to allow the government to respond to it, *see Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). Harris's opening motion did not alert the government that he wished his counsel had raised a categorical challenge to his 2006 conviction's predicate-offense status. So, unsurprisingly, the government did not respond as to whether Harris's prior conviction fit the federal definition of a "felony drug offense."

Just so, the government is incorrect to argue that Harris did not raise this issue in reply. Construing Harris's pro se briefing liberally as we must, *see McNeil v. United States*, 508 U.S. 106, 113 (1993), the citation to *Descamps* sufficiently raised the claim that counsel should have made a categorical challenge. And a categorical challenge requires comparing not just the elements of a statute but also "the provisions it

cross-referenc[es]." *Brock-Miller v. United States*, 887 F.3d 298, 310 (7th Cir. 2018). Here, that includes the drug definition.

Harris urges that any failure by him to preserve this issue is a forfeiture, not waiver. "Forfeiture results from 'inadvertence, neglect, or oversight.'" *Bourgeois v. Watson*, 977 F.3d 620, 631 (7th Cir. 2020) (quoting *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc)). Harris contends his failure in the district court was inadvertent because there he proceeded pro se. The government counters that the delay was strategic, citing cases that bar litigants from raising an argument for the first time in a reply brief on appeal to prevent sandbagging.

Harris did not gain any advantage in this delay. The government asserts in its brief that it could have introduced additional evidence "to cast scientific doubt upon the veracity of the isomer arguments." But the "isomer argument" is about the plain language of two statutes and thus purely legal. *See Ruth*, 966 F.3d at 648. Further, the government does not argue that it can show the isomers at issue are "unquestionably nonexistent." *Id.* Thus, the government was not prejudiced by its inability to develop a theoretical factual challenge in the district court and has now fully briefed the legal issue. So, Harris's conduct here constituted a forfeiture, not a waiver, of this issue.

The next question is whether to forgive the forfeiture. In earlier civil appeals, forfeited issues have been considered where, as here, "failure to present a ground to the district court has caused no one—not the district judge, not us, not the appellee—any harm of which the law ought to take note." *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749 (7th Cir. 1993). More recently we clarified that, in the context of a collateral attack on a criminal sentence, a forfeited issue may be

reviewed for plain error "where a party can demonstrate that: '(1) exceptional circumstances exist; (2) substantial rights are affected; and (3) a miscarriage of justice will occur if plain error review is not applied.'" *Bourgeois v. Watson*, 977 F.3d 620, 629 (7th Cir. 2020) (quoting *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018)). In *Bourgeois*, only the first element was assessed. *Id.* at 631–32. That decision explained that exceptional circumstances "include when a forfeited ground is 'founded on concerns broader than those of the parties,'" such as comity, federalism interests, and the conservation of judicial resources. *Id.* at 631 (quoting *United States v. Ford*, 683 F.3d 761, 768 (7th Cir. 2012)). And we concluded that those considerations alone could compel us to look past forfeiture. *Id.* at 631–32.

Similar considerations induce us to look past Harris's forfeiture. Despite his failure to raise the issue in his initial § 2255 motion, we are not acting as a court "of first view" in this matter. *Arreola-Castillo v. United States*, 889 F.3d 378, 383 (7th Cir. 2018). The district court did address this theory of ineffective assistance on appeal, albeit imperfectly—the court cited to our past cases denying categorical challenges to some elements of Indiana's dealing cocaine law without considering whether a categorical challenge to the definition of an isomer would succeed. Thus, "to dismiss the case on a procedural ground at this juncture" risks "effectively discount[ing]" the district court's generous efforts to make sense of Harris's pro se filings. *Id.* at 384; *see also Anderson v. United States*, 981 F.3d 565, 572 (7th Cir. 2020).[1]

---

[1] We considered whether the district court viewed Harris's reply brief as an amendment to his petition, as in *Perrone v. United States*, 889 F.3d 898, 909 (7th Cir. 2018). There is some support for such a reading. The

This case also presents a rare circumstance. Two weeks after the district court rejected Harris's motion, this court ruled in *De La Torre* that "the plain language chosen by the Indiana legislature" for the definition of isomers, incorporated in the state law definition of cocaine, "dictates that the Indiana statute is categorically broader than the federal definition of felony drug offense." 940 F.3d at 952. We do not blame the district court for not monitoring our docket, and it was not that court's duty to imagine every possible argument for Harris, even when liberally construing his pro se filings. At the same time, had the district court held off on its decision, it likely would have become aware of and addressed *De La Torre*. Few if any other federal prisoners face the same dilemma as Harris. His motion to vacate his sentence was decided immediately before *De La Torre*, and he timely appealed shortly thereafter. Therefore, this decision does not risk opening the floodgates to forfeited issues.

Accordingly, the standard of review here is stringent and for plain error, as any error in the district court's conclusion must be "clear or obvious." *Puckett v. United States*, 556 U.S. 129, 135 (2009). As a practical matter, though, our conclusion here would be the same under de novo review. Harris has not shown any constitutional error with counsel's performance, let alone a "clear or obvious" one.

---

district court said, for instance, that Harris's reply brief "clarifies" his claim of ineffective assistance. Although a district court may not accept amendments to a § 2255 motion *sub silentio*, the similarities between this case and *Perrone* further support our conclusion that review here is appropriate.

**B**

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), collateral relief is not available unless "counsel's performance was deficient" and "the deficient performance prejudiced the defense." The parties agree here that if counsel should have challenged Harris's predicate offenses, then Harris was prejudiced. *See Missouri v. Frye*, 566 U.S. 134, 147 (2012) (prejudice occurs when there is a "reasonable probability" that "the end result of the criminal process would have been … a sentence of less prison time"). Without the 2001 and 2006 Indiana crimes involving cocaine as predicate offenses, Harris's sentencing guidelines range would have been 121 to 151 months, substantially shorter than his 240-month prison sentence. So, we turn to whether counsel's performance was sufficient despite his failure to raise this challenge.

To show deficient performance, it is not enough to rely on hindsight about whether a proposed challenge would have succeeded. *See Bridges v. United States*, 991 F.3d 793, 802 (7th Cir. 2021). Rather, the reasonableness of counsel's performance must be assessed "in the context of the law" at the time. *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993).

At the time of Harris's sentencing, his counsel should have known about a possible categorical challenge to the predicate offenses. "In some circumstances, defense counsel may be required to anticipate arguments foreshadowed but not yet adopted by existing case law." *Bridges*, 991 F.3d at 803. By 2017, when Harris was negotiating his guilty plea, the categorical approach was well-established. *See id.* at 804 (citing *Taylor v. United States*, 495 U.S. 575 (1990)). One circuit court had already applied the categorical approach to the federal "felony drug offense" definition. *See United States v. Ocampo-*

*Estrada*, 873 F.3d 661, 667 (9th Cir. 2017). Further, this court has stated repeatedly that comparing statutory definitions is part of competent representation. *See Bridges*, 991 F.3d at 805; *Brock-Miller*, 887 F.3d at 311 ("Reading statutes and discerning their plain meaning is neither convoluted nor sophisticated; it is what lawyers must do for their clients every day.").

The government argues that a categorical challenge to Indiana's definition of an isomer was somehow more complex than a categorical challenge to any other term in the state code, and thus too obscure for a competent lawyer to contemplate. That is not convincing, though. Even minimally competent attorneys know how to raise complex legal arguments. *See Bridges*, 991 F.3d at 805 (citing cases). And the analysis called for here was not complex; as the government admits, counsel only had to compare the plain language of statutes. Moreover, "[s]entencing advocacy, both during plea negotiations and before a district court, is in most cases the most important task of a federal criminal defender," requiring close attention. *Id.* at 804. Finally, even though no cases had then adopted the view on isomers that this court has since embraced in *Ruth* and *De La Torre,* at least one court had considered the issue before Harris's sentencing hearing. *See United States v. Jimenez-Ibarra*, 695 Fed. App'x 767, 770–72 (5th Cir. 2017).

We do not know whether counsel was aware of a possible categorical challenge to Indiana's definition of an isomer. But remand for a factual hearing is not necessary because counsel's subjective assessment is not central to the legal analysis here. Even if counsel's failure to challenge the predicate offenses had been "inadvertent," rather than strategic, "relief is not automatic." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

Rather, "*Strickland* … calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). And *Strickland* makes clear that even under this objective standard, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689.

We must assess counsel's performance by considering the options available to the defense when Harris pleaded guilty and was sentenced. The record shows that regardless of whether counsel was aware of it, he had two choices. Counsel could advise Harris to accept the government's plea offer to drop one potential predicate offense, thereby significantly reducing Harris's sentencing exposure to a guarantee of 20 years (given a FED. R. CRIM. P. 11(c)(1)(C) binding agreement). Or, counsel could advise Harris to challenge his predicate offenses. If the challenge was successful, Harris would not have a mandatory minimum sentence. But if the challenge was unsuccessful, Harris would face a mandatory life sentence. And if counsel raised the challenge, the government might have withdrawn its plea offer.

Significantly, the challenge would have required counsel to "ask[] the court to break new legal ground." *Bridges*, 991 F.3d at 808. At the time of sentencing, no case law held that any state defined isomers more broadly than the federal government. At that point, the only circuit court to compare state to federal definitions of "isomers" rejected the argument that the state's definition was too broad. *See Jimenez-Ibarra*, 695 Fed. App'x at 770–72. The next circuit-level case, and the first to accept the isomer argument, was not decided until almost one year after Harris's sentencing. *See Lorenzo v. Sessions*, 902 F.3d 930, 935–56 (9th Cir. 2018), *superseded on denial of*

*rehearing on other grounds as Lorenzo v. Whitaker*, 752 Fed. App'x 482 (9th Cir. 2019).

Harris presses that counsel should have at least consulted with him about the option of a novel challenge to the predicate offenses. He correctly points out that, "[i]n the plea bargaining context," counsel must "make an estimate of a likely sentence" and "communicate the results of that analysis before allowing his client to plead guilty." *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). In *Gaylord*, this court determined that defense counsel may have been ineffective because he failed to consult with the defendant about a potential challenge to a sentence enhancement, thus failing to provide him "with the information necessary for a knowing and voluntary guilty plea." *Id.* at 507. But in *Gaylord*, the potential challenge was based on established law. Counsel advised the defendant to plead guilty in 2011, without mentioning a viable challenge to his sentence enhancement that had been established more than a year prior, in *United States v. Hatfield*, 591 F.3d 945, 948 (7th Cir. 2010). It would stretch *Gaylord* too far to read it as requiring counsel to raise with their client every potential sentencing challenge. Counsel are not required "to obtain the defendant's consent to 'every tactical decision,'" particularly those within an attorney's expertise. *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Taylor v. Illinois*, 484 U.S. 400, 417–18 (1988)). And the "isomer" challenge at issue here was too unprecedented to warrant discussion with the client.

In sum, the defense essentially had a bird in the hand—the plea offer with a set 20-year sentence—with a possibility of two in the bush—the novel challenge to the predicate offenses with the risk of a mandatory life sentence. Faced with these

options, it was objectively reasonable for Harris's counsel to pursue the plea deal. *See Harris v. United States*, 366 F.3d 593, 596 (7th Cir. 2004) (ruling counsel not deficient for declining to press an unsettled legal question when doing so would have detracted from defendant's efforts to obtain a lesser sentence).

The district court did not plainly err in denying Harris's § 2255 petition, so that court's decision is AFFIRMED.